**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| DOROTHY N. JOY, | ) CASE NO. 4:13-CV-2541 |
| Plaintiff, | ) |
| | ) MAGISTRATE JUDGE |
| v. | ) VECCHIARELLI |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social | ) |
| Security, | ) **MEMORANDUM OPINION AND** |
| | ) **ORDER** |
| Defendant. | |

Plaintiff, Dorothy Joy ("Plaintiff"), filed a complaint challenging the final decision of Defendant, Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner"), denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 423, 1381(a). This case is before the undersigned United States Magistrate Judge pursuant to the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2). In her briefing, Plaintiff does not assert any challenge to the Commissioner's final decision. Rather, she argues only that new evidence requires remand under sentence six of 42 U.S.C § 405(g). For the reasons set forth below, Plaintiff's request for remand is DENIED and the decision of the Commissioner is AFFIRMED.

**I.   PROCEDURAL HISTORY**

On January 25, 2011, Plaintiff filed her application for SSI, alleging a disability onset date of August 1, 2010. (Transcript ("Tr.") 11.) Her application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an

administrative law judge ("ALJ"). (*Id.*) On January 25, 2013, an ALJ held Plaintiff's hearing. (*Id.*) Plaintiff participated in the hearing via telephone, was represented by counsel, and testified. (*Id.*) A vocational expert ("VE") also participated and testified. (*Id.*) On March 27, 2013, the ALJ found Plaintiff not disabled. (Tr. 11-23.) On September 17, 2013, the Appeals Council declined to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1.)

On November 15, 2013, Plaintiff filed her complaint challenging the Commissioner's final decision. (Doc. No. 1.) The parties have completed briefing in this case.[1] (Doc. Nos. 20-22.) In her briefing, Plaintiff does not challenge the decision of the Commissioner. Rather, she asserts that new evidence entitles her to a remand in this matter.

## II. EVIDENCE

### A. Personal and Vocational Evidence

Plaintiff was born in April 1952 and was 52 years old on the application date. (Tr. 21.) She had at least a high school education and was able to communicate in English. (*Id.*) Plaintiff had no past relevant work. (*Id.*)

---

[1] In April 2014, Plaintiff requested, and the Court granted, an extension of time until May 6, 2014 to file her brief on the merits. (Doc. No. 17.) On May 6, 2014, rather than filing a brief, Plaintiff filed a motion to remand the case to the Social Security Administration pursuant to sentence six of 42 U.S.C. § 405(g). (Doc. No. 18.) On May 8, 2014, this Court struck the motion and instructed Plaintiff to re-file it immediately as her brief on the merits. (Doc. No. 19.) On that same date, Plaintiff complied with this Court's order. (Doc. No. 20.)

**B.     Medical Evidence**[2]

   **1.     Medical Reports**

On April 26, 2010, Plaintiff complained to Fred Pruitt, M.D., of neck pain and headaches. (Tr. 235.) She complained of neck pain again on March 22, 2010. (Tr. 236.) Although Dr. Pruitt's treatment notes are contained in the record, they are virtually illegible. Accordingly, it is not clear from the record what treatment or medications he prescribed. An April 28, 2010 image of Plaintiff's cervical spine revealed degenerative changes at C4-C5 and C5-C6, but was otherwise unremarkable. (Tr. 308.)

On October 12, 2010, Plaintiff reported to Arthur G. Lapping, D.O, that she had been in a motor vehicle accident two days earlier, when a truck collided with the bus in which she was riding. (Tr. 223.) Her neck had twisted to the right and, twenty minutes later, her neck and head began hurting. (*Id*.) She rated her pain at 7 out of 10. (*Id*.) An x-ray of Plaintiff's cervical spine taken on October 14, 2010 revealed no compression or subluxation of the vertebrae, but did show mild disc space narrowing at C4-C5 and C5-C6. (Tr. 224.)

On October 19, 2010, chiropractor Merle S. Auck, D.C., examined Plaintiff, who complained of pain and stiffness in her neck, and upper and lower back, as well as headaches, following the bus accident. (Tr. 343.) She rated her pain as 5 out of 10. (*Id*.) The chiropractor diagnosed Plaintiff with sprain/strain of cervical and lumbar

---

[2] Plaintiff alleges disability on the basis of physical and mental impairments. Her request for remand, however, is predicated upon evidence related to her physical condition. Accordingly, this Memorandum Order and Opinion addresses only the medical evidence relevant to Plaintiff's physical impairments.

3

regions, as well as headaches associated with whiplash. (Tr. 344.) He recommended that Plaintiff undergo "conservative care" consisting of ice/heat, electrical muscle stimulation ("EMS"), massage and manipulation. (*Id.*) Plaintiff treated with Dr. Auck 12 times from October 19, 2010 to December 3, 2010. (Tr. 347-48.) On December 3, 2010, Dr. Auck noted Plaintiff's "minimal" complaints of headaches, pain and stiffness. (Tr. 338.) Dr. Auck released Plaintiff from care on that date, and instructed her to return for follow up care once each month for the subsequent three months. (Tr. 339.)

On April 5, 2011, pulmonologist Salim Abou Jaoude, M.D., examined Plaintiff, who complained of shortness of breath and persistent cough. (Tr. 309-10.) Examination and a pulmonary function test revealed no acute disease. (Tr. 309.) Dr. Jaoude diagnosed Plaintiff with sinusitis, asthma, goiter and gastroesophageal reflux disease ("GERD"). (Tr. 310.) He instructed her to take Prilosec daily, and prescribed an inhaler. (*Id.*)

On May 13, 2011, Plaintiff reported to cardiologist Mark D. Fildes, M.D., that she was experiencing chest tightness. (Tr. 251.) Dr. Fildes noted Plaintiff's history of palpitations without any significant arrhythmia. (*Id.*) Dr. Fildes conducted a treadmill exercise test, which revealed no evidence of ischemia. (*Id.*) He concluded that there was no need for further cardiac workup. (*Id.*)

On May 27, 2011, Plaintiff reported to the emergency department at Northside Medical Center ("Northside"), complaining of chest pain and shortness of breath. (Tr. 279.) After monitoring, she was discharged with diagnoses of asthma exacerbation and chest pain. (Tr. 293.)

4

On July 25, 2012, Plaintiff complained to a podiatrist[3] at Jackson Podiatry of pain in her right foot when walking or standing for long periods of time. (Tr. 397.) A podiatrist diagnosed her with plantar fasciitis, tarsal tunnel syndrome, and edema. (*Id.*) Plaintiff received a cortisone injection. (*Id.*) On August 27, 2012, Plaintiff reported to the podiatrist that her pain was better after treatment, but that she was still experiencing pain. (Tr. 396.) The podiatrist noted edema, and applied a compression dressing. (*Id.*)

### 2. Agency Reports

On May 4, 2011, state agency physician William D. Padamadan, M.D., examined Plaintiff. (Tr. 241-48.) Plaintiff reported a one-year history of back pain commencing with a motor vehicle accident. (Tr. 241.) She rated her pain at 8 to 9 out of 10 and stated that it was aggravated by activities and lifting. (*Id.*) Examination revealed "excellent" range of motion in Plaintiff's cervical spine and normal or unremarkable ranges of motion in Plaintiff's extremities. (Tr. 242.) Dr. Padamadan opined that Plaintiff had a "normal physical examination," and diagnosed her with back pain without any radiculopathy or functional impairment. (Tr. 243.) He stated that she could sit, stand and walk without limitation, and could lift 10-20 pounds frequently and 20-50 pounds occasionally. (*Id.*) An image of Plaintiff's lumbar spine obtained by Dr. Padamadan revealed "mild degenerative change," but was otherwise unremarkable. (Tr. 248.)

On November 8, 2011, agency consulting physician Steve E. McKee, M.D., performed a physical residual functional capacity ("RFC") assessment. (Tr. 72-73.) He

---

[3] The record does not include the name of the podiatrist.

opined that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently and stand and/or walk and sit for six hours in an eight-hour workday. (Tr. 72.) He concluded that Plaintiff could occasionally: climb ladders, ropes and scaffolds; and stoop. (Tr. 72-73.)

**C.     Hearing Testimony**

    **1.     Plaintiff's Hearing Testimony**

During her January 25, 2013 administrative hearing, Plaintiff testified as follows:

She was participating in the hearing by phone because she did not drive and had no one to take her to the hearing. (Tr. 33.) She lived in a two-story house with her son, who was 21 years old and autistic. (Tr. 34.) She stayed mostly on the lower floor because her legs and back hurt when she used the stairs. (*Id*.) Plaintiff used a cane for balance when walking. (Tr. 35.)

Plaintiff was unable to work due to pain in her back and pain and swelling in her feet. (Tr. 37.) She experienced daily back pain that she rated as an 8 out of 10. (Tr. 37-38.) The pain radiated down her legs to her feet. (Tr. 38.) Walking and standing for extended periods of time exacerbated her pain, and Plaintiff believed she could walk about one block before having to stop. (Tr. 39.) Plaintiff kept her feet elevated to prevent swelling. (*Id*.) Her back pain interfered with her sleep. (Tr. 41.)

    **2.     Vocational Expert's Hearing Testimony**

The ALJ described the following hypothetical individual of Plaintiff's age, education and work experience:

> Our hypothetical individual would be limited to medium work
> as typically defined. They could occasionally climb ramps

> and stairs, ladders, ropes and scaffolds; frequently crouch, crawl, squat, kneel, balance. They would also be limited in that they should avoid concentrated exposure to respiratory irritants such as fumes, gases, odors, dust and extreme temperatures. Further limited to simple, routine tasks in a static environment with few, if any, changes. . . . [N]o strict time or high production quotas; superficial contact with others meaning they can work around others or in the same general area but they should not engage in any type of negotiation, arbitration, sales, conflict resolution, direction, management or group task. And finally, they should not be responsible for the health and safety of others.

(Tr. 48-49.) Thereafter, the ALJ altered the limitation on interaction to "incidental to no contact or interaction with the general public and occasional superficial . . . with co-workers and supervisors." (Tr. 50.) The VE opined that the hypothetical individual would be able to perform work as a janitor or a dietary aide. (*Id.*)

**D. Post-Decision Medical Evidence**

In June 2013, after the ALJ issued his decision and while Plaintiff's request for review was pending, Plaintiff submitted the following medical evidence to the Appeals Council:

On February 25, 2013, Robert Brocker, M.D., examined Plaintiff, who complained of chronic back pain radiating into both legs, which was worse on the right side. (Tr. 406.) She described the pain as aching and throbbing and rated it as 7 out of 10. (*Id.*) Examination revealed decreased right Achille's reflex, and right S1 and L5 hypalgesia. (Tr. 408.) Dr. Brocker diagnosed Plaintiff with back pain. (*Id.*) He instructed her to undergo an MRI and electrodiagnostic testing, and return in one month. (Tr. 409.) He prescribed Motrin. (*Id.*)

On March 22, 2013, Plaintiff underwent an MRI of her lumbar spine. (Tr. 410.)

The MRI revealed normal disc height throughout Plaintiff's lumbar spine, with disc dehydration and bulging at L3-L4, L4-L5 and L5-S1. (*Id*.)

On April 12, 2013, Plaintiff underwent a lower extremity nerve conduction test, which revealed results compatible with peripheral neuropathy and sensory lumbar radiculopathy. (Tr. 400.) A lumbar electromyogram ("EMG") performed on that date revealed bilateral S1 motor radiculopathy. (Tr. 401.)

### III. STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a).

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) *and* 416.920(b). Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) *and* 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot*, 905

F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) *and* 416.920(d). Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) *and* 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

### IV.  SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since January 25, 2011, the application date.

2. .The claimant has the following severe impairments: cervical degenerative disc disease; asthma; and major depression.

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except that claimant can occasionally climb ramps, stairs, ladders, ropes and scaffolds. The claimant can frequently crouch, crawl, squat, kneel and balance. The claimant must avoid concentrated exposure to respiratory irritants such as fumes, gases, odors, dusts and extreme temperatures. The claimant is capable of simple, routine tasks in a static environment with few, if any changes. She can have no strict time or high production quotas. Further, she is capable of incidental to no contact/interaction with

>   [the] general public and only occasional, superficial contact with co-workers/supervisors (such as work around others in the same general area, but she cannot engage in any negotiation, arbitration, sales, conflict resolution, direction, management or group tasks and [can]not [be] responsible for [the] health and safety of others).

5. The claimant has no past relevant work.

6. The claimant was born [in April 1952] and was 58 years old, which is defined as an individual closely approaching advanced age, on the date the application was filed. The claimant subsequently changed age category to advanced age.

7. The claimant has at least a high school education and is able to communicate in English.

* * *

9. Considering the claimant's age, education, work experience and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10. The claimant has been under a disability, as defined in [the Act], since January 25, 2011, the date the application was filed.

(Tr. 14-22.)

## V. LAW & ANALYSIS

### A. Standard for Remand

Under 42 U.S.C. § 405(g), a court "may . . . remand [a] case to the Commissioner . . . for further action by the Commissioner . . . and it may at any time order additional evidence to be taken before the Commissioner . . . , but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." The party seeking remand under § 405(g) bears the burden of showing that remand is appropriate. *See, e.g., Sizemore v. Sec. of Health & Human Servs.*, 865 F.2d 709, 711

(6th Cir. 1988). Evidence is new only if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Foster v. Halter,* 279 F.3d 348, 357 (6th Cir. 2001) (internal quotation marks omitted). "In order for the claimant to satisfy this burden of proof as to materiality, he must demonstrate that there was a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore,* 865 F.2d at 711.

**B.    Plaintiff's Assignment of Error**

Here, Plaintiff argues that this case should be remanded to the agency for consideration of Dr. Brocker's treatment records, including the March 2013 MRI of her lumbar spine, and April 2013 nerve conduction test and EMG. The Commissioner argues that the evidence related to Dr. Brocker's treatment of Plaintiff does not warrant remand because, *inter alias*, it is not material. The Commissioner's argument is well taken.

Plaintiff primarily contends that the evidence is material because, had the ALJ considered the results of the tests performed by Dr. Brocker, the ALJ would have concluded that Plaintiff was capable of working at the light exertional level, rather than the medium exertional level. Plaintiff states that, under the Medical-Vocational Guidelines at 20 C.F.R. Part 404, Subpart P, Appendix 2 ("Grids"), given Plaintiff's age, education and work experience, the conclusion that she was capable of light work would have resulted in a finding of disability. While this appears to be a correct interpretation of the relevant section of the Grids, Plaintiff does not explain how the test

11

results or Dr. Brocker's treatment notes would have resulted in the conclusion that she was capable of light work.  Rather, Plaintiff devotes portions of her briefing to explaining the definitions of the various exertional levels of work.  These definitions, however, are not sufficient to support her argument that the evidence of Dr. Brocker's treatment and testing would have caused the ALJ to limit her to light work.  Plaintiff's contention otherwise is mere speculation.

Further, none of Dr. Brocker's notes contain any limitations resulting from Plaintiff's back condition.  The tests he performed did not measure Plaintiff's ability to perform physical tasks.  The evidence from Dr. Brocker does not contain any opinion regarding Plaintiff's physical capabilities.  Without some evidence regarding how the condition of Plaintiff's lumbar spine affected her ability to perform tasks, there is no basis for concluding that the ALJ would have reached a different result had he considered the evidence of Dr. Brocker's treatment.

Additionally, Dr. Brocker's treatment notes and test results are cumulative of other evidence in the record.  Dr. Brocker's notes reflect Plaintiff's report of lower back pain that radiated into her legs.  (Tr. 406.)  The record considered by the ALJ reflects that, in October 2010, Plaintiff complained to her chiropractor of low back pain (tr. 343), and she testified at her administrative hearing that her back pain radiated into her legs and feet (tr. 38).  Further, the MRI performed by Dr. Brocker revealed mild bulging and other degenerative changes.  (Tr. 410.)  These results are similar to those revealed by the MRI of Plaintiff's lumbar spine obtained by Dr. Padamadan in May 2011.  (Tr. 248.)

Plaintiff also notes that the ALJ found that Plaintiff lacked credibility with respect to the severity of her impairments, and contends that, had the ALJ considered Dr.

12

Brocker's notes and test results, the ALJ would have found Plaintiff credible. This argument is unavailing. The ALJ did rely on the lack of objective medical evidence supporting Plaintiff's complaints to find her not credible. (Tr. 19 ("A careful review of the record does not disclose sufficient objective evidence to substantiate the severity of the symptoms and degree of functional limitation alleged by the claimant.") That was not, however, the only basis for the adverse credibility finding. The ALJ also pointed to: Plaintiff's description of her daily activities; her use of a cane despite the lack of any evidence of mobility problems in the record; and Plaintiff's inconsistent descriptions of her prior work. (Tr. 19.) Further, as discussed above, none of the medical evidence related to Dr. Brocker reflected the severity of, or functional limitations resulting from, Plaintiff's impairments. Thus, Dr. Brocker's notes and test results would not have bolstered Plaintiff's credibility, as the ALJ pointed to the lack of objective evidence substantiating the severity of Plaintiff's impairments and the resulting limitations as one basis for finding her not credible.

There is no basis for concluding that, had the ALJ considered Dr. Brocker's treatment notes and the results of Plaintiff's post-hearing medical tests, the result of Plaintiff's case would have been different. Accordingly, the evidence proffered by Plaintiff is not material and presents no basis for remand in this case.

## VI.  CONCLUSION

For the foregoing reasons, Plaintiff's request for remand is DENIED and the Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED**.

                                                                           s/ *Nancy A. Vecchiarelli*

                                                                           U.S. Magistrate Judge

Date: December 29, 2014